LOAN AND EXCHANGE BANK v. SHEALEY, CO. TREAS.

BENNETT v. SAME.

SCHOOL WARRANT—CERTIFICATE OF INDEBTEDNESS—NEGOTIABLE PAPER.— A school warrant drawn by the trustees of a school district in one scholastic year, and countersigned and made payable by the county superintendent of education in another scholastic year, being of the nature of a certificate of indebtedness, is void under Revised Statutes, sec. 527, and the vice being apparent on its face, the assignee cannot be protected as a *bona fide* purchaser.

22—62

Before GARY, J., Lexington, August, 1901.    Affirmed.

Two actions for mandamus : (1) by Loan and Exchange Bank against Frank W. Shealy, county treasurer, and (2) by James W. Bennett against the same.    From judgment dismissing the complaints the plaintiffs appeal.

*Mr. Allen J. Green,* for bank, appellant.

*Messrs. Allen J. Green* and *Sheppard Bros.,* for Bennett, appellant.

*Mr. Green* cites : *As to the validity of the warrants:* 16 Stat., 571 ; End. on Inter. of Stat., sec. 186 ; Gen. Stat., sec. 1008 ; Con., art. XI., secs. 5 and 6 ; 22 Stat., 150, 761 ; 51 S. C., 388 ; 23 Stat., 149.    *Appellants are bona fide purchasers for value without notice, and are entitled to protection as such unless the papers do not belong to that class to which the plea is applicable:* 15 Ency., 1208 ; 130 U. S., 666 ; 12 S. C., 200.    *Return not sufficient:* 14 Ency., 1 ed., 230, 234, 236 ; 45 Miss., 644.    *Breach of contract is not a defense to petition for mandamus:* 60 S. C., 83 ; 2 Rich. L., 40 ; 2 Strob. L., 249 ; 61 S. C., 448, 190 ; 62 S. C., 42 ; Benj. on Sales, sec. 452.

*Messrs. Efird & Dreher, W. H. Sharpe* and *T. C. Sturkie,* contra.

*Messrs. Efird & Dreher* cite : *The warrants are invalid:* 22 Stat., 150-173 ; Rev. Stat., 525.    *As drawn, these warrants are evidences of indebtedness, and as such void:* 22 Stat., 150, secs. 28, 50 ; 12 S. C., 287 ; 60 S. C., 556 ; Rev. Stat., 527 ; Dillon's Mun. Corp., 3 ed., vol. 1, secs. 131, 134 ; 15 Ency., 1 ed., 1208 ; 1 Dan. on Neg. Inst., 3 ed., 400 ; 19 Wall., 468 ; 111 U. S., 400 ; 103 U. S., 74.    *Warrants are not negotiable paper in full sense of law merchant:* 15 Ency., 1 ed., 1208 ; 16 Ency., 1 ed., 483, 484 ; 15 Wall., 570 ; 19 Wall., 478 ; 111 U. S., 400 ; 103 U. S., 74.

January 20, 1902.    The opinion of the Court was delivered by

MR. JUSTICE GARY.    The two cases above named are applications for writs of mandamus, requiring the respondent, as county treasurer of Lexington County, to pay to the plaintiffs certain warrants held by them as assignees of Tutwiler, to whom they were issued by certain school districts in Lexington County, for arithmetical charts, sold to the trustees of such districts.    These warrants were drawn by the trustees on dates ranging from 16th December, 1898, to 21st January, 1899, and made payable by the county superintendent of education 1st January, 1900, except the two warrants of districts Nos. 55 and 21, which were made payable in January, 1901.

In refusing the applications, the Circuit Judge says: "Without undertaking to state fully the issues raised by the pleadings, I am satisfied that the whole case can be disposed of by considering the main question in the case, which is the validity of the warrants of the several school districts upon the county treasurer for Lexington County.    The said warrants were drawn at a period ranging from the 16th December, 1898, to the 21st January, 1899, and were made payable January 1, 1900.    The contention of the defendant is that the several boards of trustees had no power to draw said warrants, for the reason that the same were in excess of the funds apportioned to their school districts at the time said warrants were drawn, and are, therefore, void; and that any warrant drawn to become due at a future day is in the nature of a certificate of indebtedness, and under the statute law of this State is void.    Did the said boards of trustees have the power to draw their warrants on the county treasurer on funds not then on hand applicable to the payment of the expenses of their said school districts?    The authority of boards of trustees to contract is derived from the statute creating them, in which they are prohibited from making contracts for any year in excess of the funds for that year.    The proviso of section 53 of the school law of 1896

(22 Stat., 150), is as follows: '*Provided,* That all contracts which boards of trustees may make in excess of the funds apportioned to their district shall be void.'

"Let us now look into the contract entered into by this board, and ascertain if such contract comes within those prohibited by the act. The warrant issued by said board shows on its face that said board purchased for the use of their school district, either in December, 1898, or in January, 1899, certain charts for the use of schools known as Evans' Arithmetical Study. It certainly was the purpose and intent of said board that these charts were to be paid for out of the school fund for which they were purchased. Finding, however, at the date of such purchase that there was no fund applicable to the payment of such purchase, they attempt to avoid this dilemma by expressing in the warrant, that the same is to be paid out of a fund to be accumulated or raised in the future; and, therefore, make the same payable on the first day of January, 1900, a year later. If, then, there was no fund on hand with which to pay this indebtedness, the conclusion is irresistible that such contract was void under said proviso, as being in excess of the funds apportioned to said school district, and, therefore, unauthorized and made void by the statute. The petitioner in this case must have known from the very terms of the warrant that his contract was one prohibited by law. He cannot, therefore, plead that he was the purchaser of a negotiable indebtedness without notice; the warrant that he purchased apprised him of the fact that it was issued without authority of law. Besides, the instrument itself is not such a negotiable paper as would protect the purchaser. He took it subject to all equities and legal defenses that could be pleaded between the original parties.

"My conclusion is that the board of trustees made a contract for the purchase of charts for the use of their several schools at a time when there was no fund available for such purchase; and the mere fact that said claims were made payable at a later or future time out of funds not then appor-

tioned to their said schools, was simply an effort to avoid the foregoing provision of law, and that said contract of purchase is null and void."

The plaintiffs appealed upon numerous exceptions, and the defendant served notice that in case the Court finds itself unable to affirm the judgment below upon the grounds on which it is rested by the Circuit Judge, he would move the Court to sustain it on the following grounds: "1. Because the warrants sued on are made payable at a future day, and are certificates of indebtedness and are void under the laws of our State. 2. Because the remedy of the plaintiffs is not by mandamus against the defendant, but suit against each school district."

The statutory provisions more or less affecting the questions involved are: 1st, certain sections of "An act to declare the free school law of the State," approved 9th March, 1896, 22 Stat., 150, to wit: "Sec. 21. It shall be the duty of the county superintendent of education, on or before the 15th day of July in each year, to report to the county treasurer by school districts all school claims approved by him for the school year last preceding, and the county treasurer shall thereupon close the school accounts for that year, carrying over any balance to the credit of each school district of the then current fiscal year. Sec. 22. The county superintendent of education shall keep a register of all claims approved by him and of such other matters as the State superintendent of education shall require of him, and in the form prescribed by the State superintendent. * * * Sec. 28. The county boards of education of the several counties of this State shall levy an annual tax of three mills on the dollar upon all the taxable property in their respective counties, which tax shall be collected at the same time and by the same officers as the other taxes for the same year, and shall be held in the county treasury of the respective counties, and on the 1st day of July of each year, or as soon as practicable thereafter, the said fund shall be apportioned by the said county boards respectively among the school districts of their respective

counties in proportion to the number of pupils enrolled in the public schools of such school districts; and the said county boards shall ascertain the amount of poll taxes collected in and for each school district of their respective counties, and shall notify the county treasurer and the trustees of each school district of the amount of such poll taxes as well as of the amount of the aforesaid fund apportioned by them to each school district. The school funds of each school district shall be distributed and expended by the board of trustees for the best interests of the school district, according to the judgment of the board of trustees, on their warrant approved by the county superintendent of education. * * * Sec. 31. * * * Every school district now organized, or to be hereafter organized, in pursuance of this section, is, and shall be, a body politic and corporate by the name and style of School District No.      (such number as may be designated by the county board of education) of      county (the name of the county in which the district is situated), the State of South Carolina, and in that name may sue and be sued, and be capable of contracting and being contracted with to the extent of their school fund, and holding such real and personal estate as it may come into possession of, by will or otherwise, or as is authorized by law to be purchased, all of which shall be used exclusively for school purposes. Sec. 32. Each school district shall be under the management and control of the board of trustees hereinafter provided for, subject to the supervision of the county board of education. * * * Sec. 37. The board of trustees in each school district shall take the management and control of the local educational interests of the same, and shall visit each school district at least once in every school term, and shall be subject to the supervision and orders of the county board of education. * * * Sec. 42. All claims of every description whatsoever which are chargeable against the fund raised for the support of the free public schools of the State, except such as are otherwise provided for by law, must be signed by at least a majority of the board of trustees of the school

district against which the claims are chargeable and the correctness and legality of the same shall be sworn to and subscribed by the person presenting such claim before it shall be approved by the person or persons authorized by law to give such approval. * * * Sec. 49. It shall be the duty of each county treasurer to report monthly, on the fifteenth day of each month, to the county superintendent of education of his county the amount of collections and disbursements made by him for the month on account of school tax and all other school funds; and it shall be a misdemeanor on the part of any county treasurer to neglect, fail or refuse to make such report, and on conviction thereof he shall pay a fine of not more than $500, the same to be used for school purposes in his county. Sec. 50. All moneys disbursed by any county treasurer on account of school funds, taxes or other school funds shall be paid on the order of the board of school trustees, countersigned by the county superintendent of education, or as otherwise directed by law." Sec. 53 makes it unlawful for certain officials to deal in or be interested in school claims or certificates, and provides severe penalties for breach, and proceeds after the semi-colon: "and the county board of education shall regulate the opening and closing of the school term so as best to promote and subserve the educational interests of the different sections of their counties: *Provided,* That all contracts which board of trustees may make in excess of the funds apportioned to their districts shall be void. * * * Sec. 60. The scholastic year shall begin on the 1st day of July of each year, and end on the 30th day of June following." Sec. 10, art. X., of the Constitution, provides that "the fiscal year shall commence on the 1st day of January in each year."

2d. The act of 1898, 22 Stat., 761, entitled "An act to require county superintendents of education to make monthly apportionments of all moneys reported to them as collected by county treasurers for the preceding month, and to require county treasurers to pay out the same. Sec. 1. Be it enacted by the General Assembly of the State of South

Carolina, That within ten days after the county treasurer makes his monthly report to the county superintendent of education, showing the amount of money collected by him since his last monthly report, it shall be the duty of the county superintendent of education to apportion the money arising from a tax on property as shown by the treasurer's report among the school districts of his county, and to certify such apportionment to the county treasurer, together with the poll tax belonging to each district, as shown by said report, and it shall be the duty of the county treasurer to enter upon his book to the credit of each school district the amount due each district, according to such certificate of apportionment, and the county treasurer shall pay out the money belonging to the respective districts upon the school warrants of such districts, duly signed and countersigned by the school authorities for that scholastic year, in the order of their presentation: *Provided,* That there be no outstanding claims of the previous scholastic year; and the comptroller general shall receive the warrants thus paid as proper vouchers in the hands of the county treasurer. Sec. 2. That the failure or refusal of a county superintendent of education or a county treasurer to comply with the foregoing provisions, or any of them, shall constitute a misdemeanor, and upon conviction thereof he shall be subject to a fine of not more than $100 or imprisonment in the county jail for not more than thirty days. Sec. 3. That all acts and parts of acts inconsistent with this act be and the same are hereby repealed."

3d. The following sections of the Revised Statutes: "Sec. 524. It shall be unlawful for any public officer, State or county, authorized by law to so contract, to enter into or contract for any purpose whatsoever in a sum in excess of the tax levied or the amount appropriated for the accomplishment of such purpose. Sec. 525. It shall be unlawful for any public officer, State or county, to divert or appropriate the funds arising from any tax levied and collected for any one fiscal year to the payment of any indebtedness contracted

or incurred for any previous fiscal year. * * * Sec. 527. It shall not be lawful for any State or county officer to issue any certificate of indebtedness. This provision shall not apply to the issuing of tickets to jurors or witnesses for attendance on the Circuit Courts. Nor shall it be lawful for any State officer to draw a warrant or check for any public debt except upon money then actually to his credit on that account in the hands of some bank or public officer."

It was evidently the intention of the legislature that all those having a duty to perform with reference to the school districts should be fully informed with reference to the fund apportioned to the several school districts. Realizing the great danger of conferring upon the boards of trustees unlimited power to enter into contracts within the scope of their agency, the legislature enacted the provision, "that all contracts which boards of trustees may make in excess of the funds apportioned to their districts shall be void" (section 53, act of 1896). It, likewise, limited the power of the boards of trustees by providing that they should only be "capable of contracting and being contracted with to the extent of their school fund" (section 31, act of 1896). It is an act of official misconduct for the boards of trustees to enter into contracts beyond said limit. They should keep a list of the persons with whom, and the date and amount of the contracts, entered into by them. They would thus have no difficulty in determining the extent of their power to enter into a contract.

The plaintiffs contend that the facts show that the contracts were not made in excess of the funds apportioned to the several school districts. Conceding this to be the fact, the warrants are nevertheless void because they are inhibited by section 527 of the Revised Statutes, and are likewise inimical to that provision of the section that "it shall not be lawful for any State officer to draw a warrant or check for any public debt except upon money then actually to his credit on that account in the hands of some bank or public officer." This provision was intended to prevent just such a state of

facts as here exists. As the vice was apparent upon the face of the warrant, the plaintiffs are not entitled to be protected as *bona fide* holders. Without undertaking to adjudicate anything whatever as to the validity or invalidity of the original contracts in performance of which these warrants were issued, it is quite clear from what is said above that this is not a proper case for mandamus, inasmuch as there is no specific duty imposed by law to pay these warrants. These views practically dispose of all the questions presented by the exceptions.

It is, therefore, adjudged, that so much of the judgment appealed from as dismissed the petitions be affirmed, without prejudice to the right of these appellants to enforce the performance of the original contracts by any other mode of proceeding recognized by law.